IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN COYNE, | § | |
| PLAINTIFF, | § | |
| v. | § | CASE NO. 1:14-CV-00630-AWA |
| WINDSTREAM COMMUNICATIONS, | § | |
| DEFENDANT | § | |

**PLAINTIFF'S MOTION FOR SANCTIONS FOR DISCOVERY ABUSE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, STEPHEN COYNE, and hereby files this Motion for Sanctions for Discovery Abuse directed to Defendant, WINDSTREAM COMMUNICATIONS and would respectfully show the Court the following:

**I. INTRODUCTION**

Since serving his first September 18, 2014 Requests for Production to Defendant, Plaintiff, Stephen Coyne ("Mr. Coyne"), has sought documents from Defendant that would show his sales to quota ratio and the amount and frequency of his sales as a Senior Account Executive as compared to the sales to quota ratios and amount and frequency of sales of Defendant's other Senior Account Executives. Defendant's internal terminology for the records that contain this comparative sales information for its sales employees is "Stack Ranking Reports."

Plaintiff bears the burden of proof on his disability discrimination and retaliation claims. Defendant disciplined Plaintiff on or about June 29, 2012 and August 22, 2012, allegedly for not meeting his sales quota. Defendant terminated Plaintiff on November 8, 2012, allegedly for not meeting his "sales metrics." Defendant's January 2012 through December 2012 Stack Ranking Reports bear on a pivotal question raised by Plaintiff's discrimination and retaliation claims: Did Defendant discipline and/or fire non-disabled Senior Account Executives with sales records

similar to or worse than Plaintiff, or were Defendant's sales-related justifications for terminating Plaintiff's employment pretexts for discrimination and retaliation?

Defendant at first claimed it did not know what the Stack Ranking Reports were, and asked for an example report. After receiving the examples, Defendant then claimed it diligently searched for and could not find the Stack Ranking Reports. Then, Defendant changed its story again. To shut down Plaintiff's Motion to Compel, Defendant asserted that it never created Stack Ranking Reports for months after January 2012. According to Defendant and Defendant's counsel, Defendant could not produce post-January 2012 Stack Ranking Reports because these reports did not and had never existed.

Plaintiff, however, recently obtained proof from a former employee of Defendant that Defendant did in fact create Stack Ranking Reports after January 2012. This former employee provided Plaintiff's counsel with two Stack Ranking Reports, one for January 2012 *through August 2012*, and another for January 2012 *through December 2012*.

Despite producing 2082 pages of documents to Plaintiff during the discovery period, and 260 additional pages of documents after the November 27, 2015 close of discovery (and after Plaintiff filed his Motion to Compel (**ECF Doc # 38**)), Defendant never produced these January 2012 through August 2012 and January 2012 through December 2012 Stack Ranking Reports, and lied to Plaintiff about the existence of these documents.

## II. PLAINTIFF'S REQUEST FOR RELIEF

Plaintiff seeks remedies in the form of procedural, evidentiary, and monetary sanctions for the prejudice Defendant caused by lying about the existence of the post-January 2012 "Stack Ranking Reports" and failing to produce the Stack Ranking Reports in response to Plaintiff's First and Second Requests for Production during the discovery period of the case. Defendant's actions deprived Plaintiff of the opportunity to pose deposition questions to Plaintiff's supervisor about

the comparative information contained in the reports, to serve follow-up interrogatories and requests for admission, to identify and depose additional witnesses, and to gather information necessary to oppose summary judgment and prepare for trial.

Plaintiff requests the following sanctions: (1) That the Court strike and decline to hear any Motion for Summary Judgment filed by Defendant, (2) That the Court order Defendant's counsel and Defendant to personally appear before the Court to explain why Defendant denied that the Stack Ranking Reports ever existed; (3) That the Court either re-open the discovery period only to Plaintiff up to and including the date of trial, in order to allow Plaintiff to conduct further discovery and depositions regarding the Stack Ranking Reports, or, in the alternative, instruct the jury that Defendant has not presented a legitimate business reason for Plaintiff's termination; and (4) That the Court sanction Defendant monetarily for the $37,552.50 in attorney time that Plaintiff's counsel has expended (a) pursuing the Stack Ranking Reports since October 20, 2015 and (b) filing this motion for sanctions.

### III. FACTS SUPPORTING THE IMPOSITION OF SANCTIONS

1. On September 18, 2014, Plaintiff requested that Defendant produce:

> 31. Documents reflecting all sales made by and commissions earned by Plaintiff in 2011 and 2012.
>
> 32. Documents reflecting all sales made by and commissions earned by Defendant's sales employees in 2011 and 2012.

(**Exhibit 1**, Plaintiff's First Requests for Production to Defendant at p. 7).

2. Defendant asserted a number of objections to both requests, but ultimately stated it would produce responsive documents pursuant to a protective order:

> Subject to and without waiving these objections, Defendant will produce responsive, relevant documents at a mutually agreeable time and place.

(**Exhibit 2**, Defendant's Responses and Objections to Plaintiff's First Requests for Production).

3. This Court entered a protective order on March 10, 2015 (**ECF Doc # 24**).

4. Defendant did not produce the Stack Ranking Reports following entry of the protective order, and Plaintiff served a Second Request for Production to Defendant on July 24, 2015 that made additional specific requests for comparative sales information:

> 3. Defendant's sales figures for October 2012, broken down by contract.
>
> 4. Sales records of other salespersons including: Kyle Freitag, Mendy Turner, Kim Carter, and Summer Sturm for 2011 and 2012.

(**Exhibit 3**, Plaintiff's Second Request for Production to Defendant at p. 5).

5. Defendant again stated that it would produce documents responsive to Plaintiff's requests:

> Subject to and without waiving the foregoing objections, Defendant responds as follows: confidential responsive documents will be produced that may be responsive to this Request subject to the terms and conditions of the Parties' agreed-protective order.

(**Exhibit 4**, Defendant's Objections and Responses to Plaintiff's Second Request for Production at p. 4).

6. Defendant again did not produce the Stack Ranking Reports.

7. On October 22, 2015, Plaintiff's counsel sent a letter to Defendant's counsel requesting the Stack Ranking Reports by name:

> 2012." To both of these requests, your client responded that they would produce "responsive, relevant documents at a mutually agreeable time and place." I kindly request that you supplement these responses with your client's "Stack Ranking" weekly spreadsheets from 2011 and 2012 to reflect all Combined Local Exchange Carriers (CLEC) no later than November 5, 2015.

(**Exhibit 5**, October 22, 2015 Letter from Nicole Conger to Adam Dougherty).

8. On October 26, 2015, Plaintiff's counsel sent an example Stack Ranking Report from 2011 to Defendant's counsel at Defendant's request so that Defendant would know exactly

what Plaintiff was asking Defendant to produce (**Exhibit 6,** October 26, 2015 E-mail to Adam Dougherty).

9. Defendant's counsel again did not produce the Stack Ranking Reports, asserting that after a diligent search the records could not be found and did not exist.

10. Plaintiff then filed a Motion to Compel on November 27, 2015 that included a request that the Court order Defendant to produce the Stack Ranking Reports:

> employment, (5) Mr. Coyne and comparators' Stack Ranking Reports (documents periodically created by Paetec/Windstream to show salespersons' compensation and percentage of sales to quota), (6) All recordings of Mr. Coyne, including an Executive/HR recording made two days

(**ECF Doc #38** at p. 2, 11-12).

11. On December 2, 2015, as reflected in a follow-up e-mail sent on December 3, 2015, Defendant's counsel Adam Dougherty orally represented to Plaintiff's counsel Dan Ross that Windstream stopped creating Stack Ranking Reports after its January 2012 purchase of Paetec (predecessor of Windstream) (**Exhibit 7**, December 3, 2015 E-mail to Adam Dougherty)

12. On December 9, 2015, Defendant's counsel then stated in writing that Stack Ranking Reports ceased to exist after January 2012:

> 5. Regarding category No. 5, Windstream does not have Stack Ranking Reports for CLECs after January 2012. You are in possession of the Stack Ranking Reports that Windstream has prior to that time.

(**Exhibit 8**, December 9, 2015 Letter from Adam Dougherty).

13. On December 11, 2015, Defendant's counsel again declared that Defendant did not create Stack Ranking Reports after January 2012:

> In light of your three requests and promise to withdraw the Motion in your letter, while disputing that the December 9th letter was deficient, I can affirm the following: the December 9th letter affirmatively binds the Company to its representations therein regarding the documents in its possession; Windstream discontinued Stack Ranking Reports after it took over Paetec; there were no PIPs for Mendy Turner or Summer Sturm; Windstream has produced the one PIP for Kyle Freitag; and Windstream has searched for the PIP for Kim Carter but cannot locate it.

(**Exhibit 9**, December 11, 2015 Letter from Adam Dougherty).

14. Despite Defendant's misrepresentation, however, Defendant *did* create and *continued* using Stack Ranking Reports after January 2012.

15. A former employee of Defendant recently provided Windstream's *August 2012* Stack Ranking Report to Plaintiff's counsel, and the report bears the exact title of the documents Plaintiff repeatedly requested from Defendant:

**Stack Ranking Report**
**Windstream (PAETEC)**
**TRANSACTION DETAIL**
**YTD AUGUST 2012**

| Oracle ID | Month | Auto# | Rep Name | Title | Sales Office | Sales Office Name | Account Name |
|---|---|---|---|---|---|---|---|

(**Exhibit 10**, Declaration of Nicole Conger) (**Exhibit 11 Part 1 & Part 2**, August 2012 Stack Ranking Report Worksheets).

16. Defendant's former employee also provided Plaintiff with a December 2012 Weekly Sales Report that contains the same comparative sales information as the Stack Ranking Reports (**Exhibit 12**, December 2012 Weekly Sales Report Worksheet).

17. The sales to quota ratios and other sales information for Plaintiff and other Senior Account Executives in the Austin, Texas office appear on both of these reports (**Exhibit 11 Part 1** at p. 397 & **Exhibit 11 Part 2** at p. 4) (**Exhibit 12** at p. 41-44).

19. Plaintiff deposed Plaintiff's supervisor on November 23, 2015.

18. Discovery closed in this case on November 27, 2015.

20. Plaintiff did not receive the Stack Ranking Reports from Defendant's former employee until after taking the November 23rd deposition of Plaintiff's supervisor, after the discovery period closed, and after Plaintiff filed his Motion to Compel.

21. By failing to produce the Stack Ranking Reports during discovery, Defendant deprived Plaintiff of the opportunity to question Plaintiff's supervisor about the reports.

22. By failing to produce the Stack Ranking Reports (and 260 pages of other documents) during discovery, Defendant forced Plaintiff to file a Motion to Compel, and Defendant then lied about the reports' existence to secure Plaintiff's withdrawal of that Motion.

23. By failing to produce the Stack Ranking Reports in the Fall of 2014 when originally requested, Defendant deprived Plaintiff of the opportunity to take other depositions, serve other interrogatories, or serve other requests for admission that Plaintiff's counsel may have deemed necessary based on the information in the reports.

24. Defendant's gamesmanship during the discovery process prejudiced Plaintiff's ability to marshal all available evidence to oppose a summary judgment motion and prepare the case for a jury trial, and resulted in Plaintiff's counsel expending $37,552.50 in attorney time chasing discovery that should have been produced over a year ago. (**Exhibit 10 ¶¶ 7, 9, 12**).

### IV. LEGAL AUTHORITY IN SUPPORT OF THE IMPOSITION OF SANCTIONS

"Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 33 (1991). Appropriate targets of a Court's sanctioning

power includes stratagem by which a party seeks to prevail not on the merits of the case but by tactics of delay and fraud. *Id.* at 44.

Federal Rule of Civil Procedure 37(c) also subjects a party who fails to disclose the existence of relevant documents under Rule 26(a) or supplementally produce responsive documents under Rule 26(e) to a wide range of sanctions including "payment of the reasonable expenses, including attorney's fees, caused by the failure," informing "the jury of the party's failure," designating "facts be taken as established for purposes of the action," "prohibiting the disobedient party from supporting or opposing designated claims or defenses…," striking pleadings, staying the proceedings, dismissing the action, and rendering a default. Fed. R. Civ. P. 37(c)(1)(A)-(C), incorporating by reference Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

The Fifth Circuit Court of Appeals has found that knowingly denying the existence of documents critical to a case constitutes the type of bad faith conduct that warrants sanctions. *Crowe v. Smith*, 151 F.3d 217, 239 (5th Cir. 1998) (upholding sanctions against an attorney named Berry who answered "none" when responding to requests for an applicable insurance policy that he knew existed). In the case of an attorney who not only failed to produce a potentially applicable insurance policy but also denied the document's very existence, the Fifth Circuit rejected the notion that the attorney could excuse his deception by arguing he had deemed the document irrelevant. *Id.* Similarly, the Eastern District of Louisiana rejected a supervisor's claim that she did not disclose the existence of notes she had made about disciplining the Plaintiff because she deemed them unimportant. *E.E.O.C. v. Res. for Human Dev., Inc.,* 843 F. Supp. 2d 670, 672 (E.D. La. 2012).

As a Board-certified lawyer in labor and employment law, Defendant's attorney Adam Dougherty should be well aware of legal precedent that allows Plaintiff-employees to establish pretext by looking at the comparative treatment of other employees and to obtain discovery that allows a Plaintiff to compare his treatment to others outside his protected class. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 793, 804 (1973) ("respondent must be afforded a fair opportunity of proving that petitioner's stated reason was just a pretext for a racially discriminatory decision, such as by showing that whites engaging in similar illegal activity were retained or hired by petitioner"); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (holding that a district court abused its discretion by denying plaintiff discovery into the treatment about comparator employees because such information "could be central to the plaintiffs' effort to prove pretext"); *See Also Wilson v. Martin County Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D. Tex. 1993) (granting plaintiff's motion to compel personnel information of other employees, noting that all or parts of the personnel files can be central to proving pretext and are therefore discoverable).

Defendant also cannot claim that it did not understand Plaintiff's general requests for the sales records of other salespersons to include the Stack Ranking Reports, as Plaintiff not only sent letters requesting the reports by name (**Exhibit 5**), but also sent Defendant an example 2011 Stack Ranking Report (**Exhibit 6**). Defendant and its counsel demonstrated their understanding of Plaintiff's requests by asserting that Defendant had already produced earlier reports and that Defendant stopped creating the reports after January 2012 (**Exhibits 7, 8, 9**).

Defendant is a sales-based organization. Its very operation depends on the availability of sales data, as demonstrated by the hundreds of pages contained in just one worksheet of its August 2012 Stack Rankings Report (**Exhibit 11 Part 1**). The former, non-managerial employee who provided the documents to Plaintiff readily understood which sales records Plaintiff was looking for. It is beyond the pale that either Defendant's failure to produce the reports during *fourteen months* of back and forth about available comparative sales data, or Defendant's denial of the existence of such detailed and voluminous reports, constituted a mere lapse of memory or some other excusable mistake. Plaintiff does not request unnecessary or extreme sanctions for Defendant's conduct, but rather sanctions that will remedy the harm done to Plaintiff's ability to

oppose summary judgment and prove pretext at trial. *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993) (the standards for sanctions include fairness and a substantial relationship between the sanction and the impacted claim as well as deterrence of future abuse of the discovery process).

## V. MOTION FOR ATTORNEY'S FEES

Plaintiff asks the Court to award Plaintiff's counsel reasonable and necessary attorneys' fees for the time Plaintiff's counsel spent pursuing the Stack Ranking Reports before and after filing Plaintiff's Motion to compel, preparing Plaintiff's Motion to Compel, and preparing this Motion for Sanctions, and appearing at a hearing.

## VI. CERTIFICATE OF CONFERENCE

The undersigned certifies that Daniel B. Ross of the Ross Law Group conferred with Counsel for Defendant regarding the relief sought herein. Defendant is opposed to this Motion.

## VII. CONCLUSION

For all of the reasons set out above, Plaintiff respectfully requests that this motion be granted, and respectfully requests the Court to exercise its discretion in granting some or all of the following relief: (1) Striking Defendant's Motion for Summary Judgment, (2) Ordering Defendant's counsel and Defendant to personally appear before the Court to explain how Defendant's counsel came to deny that the Stack Ranking Reports ever existed; (3) Re-opening the discovery period to Plaintiff only through to the date of trial to allow Plaintiff to conduct further discovery and depositions regarding the Stack Ranking Reports, or, in the alternative, instructing the jury that Defendant has not presented a legitimate business reason for Plaintiff's termination; (4) Sanctioning Defendant monetarily for the $37,552.50 in attorney time that Plaintiff's counsel has expended (a) pursuing the Stack Ranking Reports since October 20, 2015 and (b) filing this motion for sanctions.

Respectfully submitted,

ROSS LAW GROUP
1104 San Antonio St.
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile

*/s/ Nicole M. Conger*
Nicole M. Conger
State Bar No. 24064571
Daniel B. Ross
State Bar No. 00789810

ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the Defendants on this 16th day of December 2015, addressed as follows, and filed the foregoing with the Clerk of the Court using the CM/ECF system:

Adam Dougherty
Ogletree, Deakins, Nash, Smoak, & Stewart, PC.
8117 Preston Road, Ste. 500
Dallas, Texas 75225

*/s/ Nicole M. Conger*
Nicole M. Conger