IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN COYNE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 1:14-CV-00630-AWA |
| WINDSTREAM COMMUNICATIONS, | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS FOR DISCOVERY ABUSE

COMES NOW, Defendant Windstream Communications, Inc. ("Defendant" or "Windstream"), by and through the undersigned counsel, and files this its Response to Plaintiff Stephen Coyne's ("Plaintiff" or "Coyne") Motion For Sanctions for Discovery Abuse ("Motion"), as follows:

### I. SUMMARY OF ARGUMENT

Plaintiff's motion for sanctions (the "Motion"), which concerns "Stack Ranking Reports" after January 2012, should be denied under the Rule 37(c)(1) framework Plaintiff cites in it.[1] In his Motion, Plaintiff admits that he now possesses confidential Stack Ranking Reports (which he filed under seal) from after that time dated August 2012, having admittedly learned about them (if not received them) prior to the close of the discovery period from an ex-Windstream employee. Plaintiff complains, however, that Defendant should have not stated, prior to his withdrawing his motion to compel, that it discontinued Stack Ranking Reports after January

---

[1] As explained below in Section II, the authority for sanctions upon which Plaintiff actually relies is not clear to Defendant. Defendant, however, satisfies the standards against sanctions under any of the authorities Plaintiff cites.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS
FOR DISCOVERY ABUSE** Page 1

2012. His motion to compel identified one of his requests for production that sought sales documents, but not specifically Stack Ranking Reports, for four salespeople (Freitag, Carter, Turner and Strum) from Defendant's Austin office where Plaintiff worked. Plaintiff states that he sought this information in order to establish that he was similarly situated to them. Defendant lodged legitimate objections to that request evidencing a substantial justification under Rule 37 showing that sanctions are not warranted.

The Motion should also be denied because the factors for establishing harm under Rule 37 are not present: (1) the importance of the evidence; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice; and (4) the explanation, if any, for the party's failure to disclose. Regarding the first and second factors, and as reflected in Defendant's objections to the aforementioned request for production, none of those four Austin salespeople are actually similarly situated to Plaintiff. Nevertheless, Defendant did, in fact, produce extensive sales information and other related documents and information to Plaintiff regarding those four Austin salespeople, and Plaintiff also questioned the only witness he deposed about that information. This information, not unlike the Stack Ranking Reports attached to the Motion, showed that Plaintiff had higher overall sales in 2012 than Freitag and Carter, the two senior account executives of the four Austin salespeople who both stopped working for Defendant weeks and even months before Plaintiff's termination. Regarding Plaintiff's termination, Defendant did not terminate his employment based on how his sales ranked against the other four Austin salespeople. In addition to having that sales information Defendant produced to him, Plaintiff also admits that his counsel had knowledge (if not possession) of the documents in Exhibits 11 and 12 to the Motion (the "Exhibits") *prior* to end of the discovery period on November 27, 2015, further weighing against the "prejudice" factor. *See* Ex. D to Motion at ¶¶ 5-6.

The "cure" factor also weighs against imposing sanctions. Defendant has agreed to stipulate to the authenticity of the information in the Exhibits concerning the four Austin salespeople (only several rows of several pages of which relate to them), which could alleviate Plaintiff's need to take further discovery concerning them. Nevertheless, Defendant has also offered (and remains willing to offer) to extend the case deadlines so that Plaintiff can take discovery regarding the information in the Exhibits concerning these four salespeople including producing a 30(b)(6) witness to testify on this topic. The offer was not accepted. The "explanation" factor further weighs against the imposition of sanctions. Defendant did not intentionally conceal the information in the Exhibits as demonstrated, among other things, by its production of that sales information concerning the four Austin salespeople. The dispute arises from an inadvertent misunderstanding of when the Company discontinued Stack Ranking Reports. Based on the foregoing, the Motion should be denied.

## II. PLAINTIFF CITES NO LEGAL AUTHORITY WARRANTING SANCTIONS

The cases cited in the Motion refer to sanction standards that are not applicable in this matter. First, Plaintiff relies upon cases which cite to the court's inherent power to sanction. *See Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998) and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). To the extent Plaintiff relies upon the court's inherent power to sanction, "the threshold for the use of inherent power sanctions is high." *Crowe*, 151 F.3d at 236. The Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406–07 (5th Cir. 1993) (inherent powers must be exercised with restraint and discretion and only sparingly so). Pursuant to the *E.E.O.C. v. Res. For Human*

*Dev., Inc.* case to which Plaintiff cites, "severe sanctions may not be warranted if lesser sanctions can reasonably remedy the sanctionable conduct." 843 F. Supp. 2d 670, 672 (E.D. La 2012).

Plaintiff further cites to cases which pertain to Rule 37(b) (a party's failure to comply with a court order). *See Chilcutt v. U.S.*, 4 F.3d 1313 (5th Cir. 1993). "Rule 37(b)(2) authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders." *Id.* at 1319-20. Under Rule 37(b)(2), courts' discretion in imposing appropriate sanctions for parties who disobey their orders is broad, but not unlimited. *See Id.* at 1320. Additionally, to the extent Plaintiff relies upon Federal Rule of Civil Procedure 11, he failed to comply with the requirements of same. Under Rule 11, the movant on a motion for sanctions must serve the motion under Rule 5, but it must give the opponent 21 days to cure by withdrawing or correcting the offending issue before filing the motion. *See* FED. R. CIV. P. 11 (c)(2). Defendant's counsel requested was denied three (3) times that Plaintiff's counsel send the Motion to it before filing. *See* Exhibit A, true and correct copies of same. Thus, relief under this Rule is improper.

As best Defendant can ascertain, Plaintiff attempts to assert violations under Federal Rule of Civil Procedure 37(c)(1) and requests sanctions afforded under this provision. *See Motion* at p. 8. Rule 37(c)(1) applies to a party who fails to disclose the existence of documents or witnesses under 26(a) or fails to supplement disclosures or discovery responses under 26(e). FED. R. CIV. P. 26(a),(e). Rule 37(c)(1) expressly states as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Thus, unless the defendant shows the failure was substantially justified or is harmless, a court may forbid the party to use such information as evidence in a motion, hearing or at trial. *See United States v. $9,041,598.68,* 163 F.3d 238, 252 (5th Cir. 1998), *superseded by statute on other grounds*, 18 U.S.C. § 983(j) (2000). For the purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Okla. v. Tyson Foods, Inc.*, 262 F.R.D. 617, 636 (N.D. Okla. 2009). In determining whether a violation of Rule 26(a) or (e)(1) is harmless, the trial court's discretion is to be guided by the consideration of four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice; and (4) the explanation, if any, for the party's failure to disclose. *See United States v. $9,041,598.68*, 163 F.3d at 252 (citing *Bradley v. United States*, 866 F.2d 120 (5th Cir. 1989). Extreme sanctions, such as striking a pleading or entering judgment against the offending party, are "pungent, rarely used, and conclusive. A district judge should employ [them] only when [s]he is sure of the impotence of lesser sanctions." *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D. N.Y. 2011).

### III.   FACTS

1.   Plaintiff worked as a senior account executive at Windstream until his termination on November 8, 2012.[2] He filed suit against Windstream on May 28, 2014 asserting wrongful termination claims as well as breach of contract and unjust enrichment claims arising from a disputed commission in November 2011. *See* Dkt. Entry No. 5. In this case, Plaintiff took one

---

[2] In July 2011, Plaintiff started to work for Paetec Communications ("Paetec"), which the Company purchased around December 2011.

deposition (of Windstream's former employee, Mark Walker, in his individual capacity) on November 23, 2015.[3] Four days later on the last day of the discovery period, November 27, 2015, Plaintiff filed his only motion to compel entitled Plaintiff's Motion to Compel Defendant to Respond to Discovery and Request for Additional Time to Conduct Further Discovery (the "Motion to Compel"). *See* Dkt. Entry No. 38. Counsel for the parties attempted to confer about Plaintiff's Motion to Compel on the eve of Thanksgiving two (2) days before the discovery cut off on November 27, 2015. *See* Exhibit C, a true and correct copy of same. The parties were not able to resolve the dispute at that time.

2. Starting with a conference between counsel on the evening of Wednesday, December 4, 2015, Defendant attempted in good faith to resolve the Motion to Compel. The Motion to Compel sought 10 categories of documents, among other things. *Id*. at p. 2. Plaintiff requested that Defendant represent in writing those documents in its possession (or not in its possession) that Plaintiff sought in his Motion. Reserving its defenses to the Motion to Compel and without waiving its discovery objections, Defendant sent such letter to Plaintiff on December 9, 2015. *See* Exhibit D, a true and correct copy of same. Regarding Stack Ranking Reports, Defendant stated that it did not have Stack Ranking Reports for CLECs after January 2012. *Id.* Plaintiff informed Defendant on December 10, 2015 that it was not satisfied with the letter and demanded revisions to it in exchange for withdrawing the Motion to Compel. *See* Exhibit E, a true and correct copy of same. Out of a spirit of resolution and cooperation, Defendant sent a second letter to Plaintiff on December 11, 2015 that it believed resolved the dispute. *See* Exhibit

---

[3] Defendant worked with Walker to waive personal service of his deposition notice so that Plaintiff could take Walker's deposition within the discovery period. *See* Exhibit B, true and correct copy of correspondence. Plaintiff's counsel deposed Walker from 10:03 a.m. to 7:43 p.m. (including breaks) and entered into the deposition record documents that Plaintiff had not previously produced to Defendant in discovery. *See* Walker dep. at 236:18-240:24, Dep. Exs. 24-26.

F, a true and correct copy of same. In it, Defendant sought to clarify that it discontinued Stack Ranking Reports after January 2012, subsequent to its purchase of Paetec. The Motion was withdrawn on December 4, 2015. *See* Dkt No. 42.

3. On the morning of Wednesday, December 16, 2015, Plaintiff's counsel emailed Defendant's counsel to seek its opposition or non-opposition to a forthcoming motion for sanctions (the "Motion"). Defendant's counsel requested first orally and then twice via email that Plaintiff's counsel produce a copy of the Motion to him before filing it so that the parties could engage in legitimate efforts to resolve the subject matter of it. *See* Exhibit A, true and correct copies of same. Plaintiff's counsel refused to do so.

4. The Motion relates to one request for production identified in the now withdrawn Motion to Compel – Request No. 4 from Plaintiff's Second Requests for Production that he served on Defendant on July 24, 2015 ("Second Requests"). *See* Motion to Compel at pp. 11-13; Motion at p. 4, No. 4. Plaintiff concedes that he sent his Second Requests "*in an attempt to narrowly tailor its prior requests*." (emphasis added). *See* Motion to Compel at p. 5, No. 17. In that Request No. 4, Plaintiff sought sales records of other salespeople "including: Kyle Freitag, Mendy Turner, Kim Carter, and Summer Sturm for 2011 and 2012." *See* Motion to Compel at pp. 11-13; Motion at p. 4, No. 4. In response, Defendant objected on several legitimate grounds, including, but not limited to, that it was vague, overbroad and that the "information does not relate to similarly situated comparators." *See* Motion to Compel at p. 11.[4] Plaintiff omits those

---

[4] Plaintiff identifies three other requests (in response to which Defendant lodged legitimate objections; *see* Motion Exs. 2 and 4) for production in his Motion. *Id*. at pp. 3-4. Only one of those requests, however, is also from Plaintiff's Second Requests, which Plaintiff admittedly served to narrow the requests from its first requests for production. That request sought Defendant's sales figures for October 2012, broken down by contract, which does not relate to Stack Ranking Reports, the subject of this Motion. Furthermore, Plaintiff's challenges, if any, to those three other requests amount to a late filed motion to compel because they were not identified as part of the 10 categories of documents Plaintiff sought in his Motion to Compel. *See* pp. 8-17 (disputed requests). A party should

objections from his Motion.  Similarly, Plaintiff's Motion to Compel and Motion also lack any analysis that the four Austin salespeople are similarly situated to Plaintiff.

5. None of those four Austin salespeople are similarly situated to Plaintiff. *See Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (explaining similarly situated standard).  Freitag is not similarly situated to Plaintiff for numerous reasons, including, but not limited to, because they had different job duties and responsibilities in their roles with the Company in 2012 when Freitag alone worked in a new, risky and ultimately unsuccessful vertical; Freitag was not managed by Todd Bryant (who made the decision to terminate Plaintiff's employment) like Plaintiff was; and Freitag stopped working for the Company over five weeks before Plaintiff's termination on November 8, 2012 and shortly after Freitag received a performance improvement plan.[5]  Similar dispositive arguments apply to Carter, who stopped working for the Company in April 2012, as well as to Turner (major account executive) and Strum (account executive) who both worked in different positions than Plaintiff.[6]

6. Despite its valid objections to the Request, the Motion omits that Defendant produced to Plaintiff extensive sales information relating to the four Austin salespeople as well as for Plaintiff and his sole significant customer. *See, e.g.,* Ex. K, Windstream 1913-1934 (**filed under seal**); Windstream 1801 (**filed under seal**).  The sales information included the date of the sales transaction, the plan element describing the type of sale, the commission amount and the

---

not wait until discovery closes to file a motion to compel.  *See Curry v. Strain,* 262 Fed. Appx. 650, 652 (5th Cir. 2008) (court did not abuse discretion in denying untimely motion to compel); *Layne Christensen Co. v. Bro-Tech Corp.,* 871 F.Supp.2d 1104, 1121, n. 9 (D. Kan. 2012) (delay in filing a motion to compel raises a reasonable inference that the responses were proper).

[5]  *See* Ex. G, Coyne dep. at 170:23-172:2, Dep. Ex. 8.;  242:24-245:21; Dep. Ex. 16; 112:7-9; *see* Ex. H, Walker dep. at 105:23-106:6; 109:19-112:7; 192:8-194:11; Dep. Ex. 11; *see* Ex. I, Walker dec. at ¶ 6-15; *see* Ex. J, Bryant Dec. at ¶ 20.

[6]  *See* Ex. G, Coyne dep. at 170:23-172:2, Dep. Ex. 8; 244:24-245:21; Dep. Ex. 16; 111:12-23, 112:7-9; 246:5-6; 107:4-12;107:22-108:16; *see* Ex. H, Walker dep. at 194:14-20; 25:8-20, 29:24-30:7; *see* Ex. I, Walker dec. at ¶ 13-15; *see* Ex. J, Bryant dec. at ¶ 20.

transaction amount for the salespeople, not dissimilar from information found in Stack Ranking Reports, and showed like them that Plaintiff had higher overall sales than Freitag and Carter in 2012. Defendant, however, did not terminate Plaintiff's employment based on how his sales ranked against the other four Austin salespeople. *See* Ex. J. Defendant also produced other information about Freitag's and Carter's sales performance including in its EEOC position statement and performance improvement plan documents. *See* Ex. H, Walker dep. at 98:14-100:23, Dep. Ex. 9 at p. 5; 109:20-110:23, Dep. Ex. 11. Plaintiff's counsel used this sales information to question Mark Walker during his deposition. *See* Ex. H, Walker dep. 98:14-100:23, Dep. Ex. 9; 109:20-110:23, Dep. Ex. 11; 186:25-190:22, Dep. Exs. 18-21 (**filed under seal**). Additionally, Plaintiff also testified about sales information in his deposition. *See, e.g.,* Ex. G, Coyne dep. at 102:15-25, 150:16-151:17.

      7.      In its Motions, Plaintiff does not consistently define "Stack Ranking Reports." *See* Motion to Compel at Section II, p. 2 (referring to "compensation and percentage of sales to quota"); No. 48, p. 12 (referring to "national" "rankings" among other things); Motion at No. 7, p. 4 ("spreadsheets… to reflect all Combined Local Exchange Carriers (CLEC)"); and Motion No. 16, p. 6 (referring to "the same comparative sales information."). Only several rows on several pages in the Exhibits relate to Plaintiff or the four Austin salespeople. *See* 11A (none), 11B (none), 11C (none), 11D (pp. 327-328 (Freitag, 10 rows) 379-380, (Carter, two rows), 397-398 (Plaintiff, seven rows)); Exhibit 11, Part 2 (pp. 4-6, three rows total regarding Plaintiff, Freitag and Strum); and Exhibit 12 (pp. 41-44, three rows total regarding Plaintiff and Sturm). Exhibit 12 is not entitled as a "Stack Ranking Report," but a "Weekly Sales Report."

## IV. LEGAL ANALYSIS

The crux of Plaintiff's Motion is that Defendant should be sanctioned for stating it discontinued Stack Ranking Reports after January 2012 even though Plaintiff – prior to the close of the discovery period – learned about (if not possessed) Stack Ranking Reports dated after that time from an ex-Windstream employee. The Motion contains little analysis of the legal standards for the imposition of sanctions based on the foregoing.

Plaintiff has not shown that the Exhibits are sufficiently important and that he suffered prejudice such that sanctions are required. To the contrary, the importance and prejudice factors weigh against sanctions. The sole request in question to which Defendant objected sought sales records, but not specifically Stack Ranking Reports, for Freitag, Turner, Carter and Sturm. Those objections further show that there was a substantial justification, negating sanctions pursuant to Rule 37. Plaintiff specifically sought Stack Ranking Reports for purposes of establishing that he was similarly situated to them. *See* Motion at pp. 1 (limiting comparison to "Senior Account Executives") and 8-9. Plaintiff, however, did not perform even a cursory similarly-situated analysis in the Motion to Compel or Motion. As described above, none of those four Austin salespeople are, in fact, similarly situated to Plaintiff. Nevertheless, Defendant did produce extensive sales information concerning these four Austin salespeople, a fact that was not disclosed in the Motion. This information, not unlike the information in the Exhibits regarding the four Austin salespeople, shows that Plaintiff had higher sales numbers in 2012 than Freitag and Carter. Defendant, however, did not terminate his employment based on how his sales ranked against the other four Austin salespeople. Plaintiff, who also testified about such information, took one deposition of Mark Walker (a non-30(b)(6) witness) and questioned him about this sales information. Thus, the importance and prejudice factors weigh against sanctions.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**
**FOR DISCOVERY ABUSE** Page 10

In a declaration attached to the Motion, Plaintiff admits his counsel had knowledge of the confidential documents constituting the Exhibits *prior* to the close of the discovery period on November 27, 2015.[7] *See* Motion at Ex. 10, declaration ¶¶ 5-6. Despite having knowledge of them, and access to (if not possession of) them, Plaintiff did not question Mark Walker about them during his deposition on November 23, 2015, the same week the discovery period closed.[8] Likewise, Plaintiff did not produce those documents to Defendant during their conferences about the Motion to Compel or Motion, much less during the discovery period.[9] Moreover, Plaintiff only amended his disclosures to supplement the knowledge of that ex-employee who gave the documents to his counsel one day *after* he filed the Motion on December 17, 2015. *See* Ex. L, a true and correct copy of same, at p. 4, Sec. I (No. 6); compare to previous disclosures without same (**filed under seal**).[10] These facts weigh against sanctions.

The "cure" factor further weighs against imposing sanctions. During conferences with opposing counsel on December 18, December 21, 2015, and again on December 31, 2015, Defendant agreed to stipulate to the information in the Exhibits concerning the four Austin salespeople. Further, Defendant has also offered (and remains willing to offer) to extend the case deadlines so that Plaintiff can take discovery on those Exhibits concerning the four

---

[7] The declaration is vague regarding when Plaintiff's counsel received notice of the Stack Ranking Reports from the ex-employee describing the time only as prior to the close of the discovery period. *Id*. Further, it is silent regarding when Plaintiff received the actual Exhibits from the ex-employee. *Id.*

[8] Plaintiff presented other documents for the first time during Mark Walker's deposition that it did not previously produce in discovery. *See* Walker dep. at 236:18-240:24 Dep. Exs. 24-26.

[9] Such documents are responsive to Defendant's requests for production. *See* Exhibit M at Nos. 46, 1, 12, and 39.

[10] In light of the analysis above, striking Defendant's motion for summary judgment is unwarranted and not supported by case law including, but not limited to, because there are less severe remedies that can cure any harm. Moreover, Defendant did not rely on the Exhibits in its motion for summary judgment and asserts defenses like judicial estoppel and limitations. Likewise, Plaintiff's claim for attorneys' fees is unwarranted and excessive and not supported by the case law in light of the information above. Moreover, the request apparently includes time spent preparing the Motion to Compel, which contained nine (9) other categories of documents not made the subject of this Motion.

salespeople, including producing a 30(b)(6) witness to testify about that topic. Plaintiff's counsel has not accepted this offer, having stated that Plaintiff seeks to open discovery on *all* matters in the case even though the Motion seeks to open discovery on Stack Ranking Reports.[11]

Finally, the "explanation" factor weighs against the imposition of sanctions. Defendant did not intentionally conceal the information in the Exhibits, only several pages of which relate to Plaintiff or the four Austin salespeople, and was not motivated to do so as reflected in the production to Plaintiff of sales information, subject to its objections, concerning the four Austin salespeople and the reasons for Plaintiff's termination. The dispute arises, not from intentional efforts to deceive, but from an inadvertent misunderstanding of when the Company discontinued Stack Ranking Reports.[12] After further searches and consideration of the Exhibits, the Company realized that it discontinued them after August 2012 not January 2012.[13] Based on the foregoing, Plaintiff's Motion should be denied.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion should be denied whether analyzed under Rule 37 or any of the other standards in the Motion. Defendant's objections to the disputed request for production show a substantial justification regarding a genuine dispute. Moreover, the four factors under Rule 37 all weight against sanctions: importance, prejudice, cure and explanation. Defendant respectfully requests that the Court deny Plaintiff's Motion in its entirety, and award Defendant all such other relief to which it may be entitled.

---

[11] Plaintiff's counsel has also previously stated they could not identify what information they believe they were missing from the Exhibits conceding they had not closely reviewed them yet.

[12] Part of the confusion also resulted from the challenges the Company experienced merging the Paetec commission departments and reporting with the Company's, and the Company's heritage nomenclature for referring to the latter.

[13] It replaced them with Weekly Sales Reports.

Respectfully submitted,

/s/ Adam T. Dougherty
Adam T. Dougherty
Texas Bar No. 24026809
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
adam.dougherty@ogletreedeakins.com
Preston Commons West
8117 Preston Road, Suite 500
Dallas, TX 75225
214.987.3800
214.987.3927 (Fax)

and

Michael W. Fox
State Bar No. 07335500
michael.fox@ogletreedeakins.com
Tara M. Kumpf
State Bar No. 24092652
tara.kumpf@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1150
Austin, TX 78701
(512) 344-4700
(512) 344-4701 (Fax)

ATTORNEYS FOR DEFENDANT
WINDSTREAM COMMUNICATIONS

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Daniel B. Ross
Nicole M. Conger
Ross Law Group
1104 San Antonio Street
Austin, TX 78701

/s/Adam T. Dougherty
Adam T. Dougherty

23117630.5